**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JENNA S., Plaintiff, | ) | |
| v. | ) | 1:24CV383 |
| LELAND C. DUDEK, Acting Commissioner of Social Security, Defendant.[1] | ) | |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Jenna S., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 10 (Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief); Docket Entry 13 (Plaintiff's Reply)). For

[1] President Donald J. Trump appointed Leland C. Dudek as the Acting Commissioner of the Social Security Administration on February 17, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland C. Dudek should substitute for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 183-86), alleging a disability onset date of December 31, 2012 (see Tr. 183-84).[3] Upon denial of that application initially (Tr. 71-78, 86-90) and on reconsideration (Tr. 79-85, 92-95), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 98). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 34-70.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 14-33.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 143-45), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the . . . Act on March 31, 2018.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her (amended) alleged

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

[3] Plaintiff later amended her onset date to December 1, 2014. (See Tr. 17, 39, 199.)

onset date of December 1, 2014 through her date last insured of March 31, 2018.

. . .

3. Through the date last insured, [Plaintiff] had the following severe impairments: degenerative disc disease (DDD), degenerative joint disease (DJD), osteoarthritis, bursitis, insomnia, fibromyalgia, depressive disorder, anxiety disorder, personality disorder, and posttraumatic stress disorder (PTSD).

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except frequent reach, handle, finger, and feel; occasionally use ramps and stairs, balance, stoop, knee[l], and crouch; no workplace hazards, such as machinery, heights, ladders, ropes, and scaffolds; in a low stress environment with no production pace, frequent contact with supervisors and coworkers, occasional contact with the public, and has the ability to adapt to occasional changes in the workplace setting.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

> 11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from December 1, 2014, the (amended) alleged onset date, through March 31, 2018, the date last insured.

(Tr. 19-30 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

**B. Assignment of Error**

Plaintiff's first and only assignment of error maintains that "[t]he ALJ erred by failing to define the non-vocationally-relevant RFC limitation to work 'in a low stress environment with no production pace,' thereby limiting this Court's review of the RFC restrictions and jobs cited at [s]tep [f]ive of the SEP in violation of . . . precedent [from the United States Court of Appeals for the Fourth Circuit]." (Docket Entry 10 at 3 (bold font

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

and block formatting omitted); see also Docket Entry 13 at 1-4.) In particular, Plaintiff notes that, in Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019), the Fourth Circuit held that an RFC precluding "'work requiring a production rate or demand pace . . . did not give [the court] enough information to understand what those terms mean[, which ] makes it difficult, if not impossible, for [the court] to assess whether their inclusion in [the plaintiff]'s RFC is supported by substantial evidence.'" (Docket Entry 10 at 4 (quoting Thomas, 916 F.3d at 312) (internal quotation marks omitted).) In Plaintiff's view, the ALJ's failure to "include sufficient additional information to understand and review the meaning of the ALJ's production-related limitation" (id. at 11) prevents the Court from determining if 1) "the production-related limitation accounts for Plaintiff's moderate [concentration, persistence, or pace ('CPP')] deficits" under Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) (Docket Entry 10 at 11), and 2) "VE testimony regarding the availability of the jobs cited for an individual with [those] production-related limitations conflicts with the [Dictionary of Occupational Titles' ('DOT's')] description of the requirements of each job" (id. at 12 (bold font, underscoring, and block formatting omitted)), when "it is reasonable to expect that each of the jobs the ALJ cited . . . could require work that exceeds a limitation to 'a low

stress environment with no production pace'" (id. at 13 (quoting Tr. 23)). Plaintiff's contentions miss the mark.

a. CPP/Mascio

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task[,]" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14CV63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why the plaintiff could perform unskilled work despite moderate limitation in CPP, by highlighting his daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to how restrictions to work "in a low stress

environment with no production pace" involving "frequent contact with supervisors and coworkers," "occasional contact with the public," and "occasional changes in the workplace setting" (Tr. 23) adequately accounted for Plaintiff's moderate deficit in CPP.

As an initial matter, the ALJ discussed Plaintiff's statements that she had "trouble completing tasks[ and] concentrating" (Tr. 24 (referencing Tr. 233)), that her "'[mental impairments] affect[ed her] ability to communicate, withstand public stresses, and be affective [sic] as demanded in the work field,'" and that "'[she] ha[d] breakdowns, crying spells, and mood problems employers w[ould] not put up with'" (id. (quoting Tr. 228)). However, the ALJ found "no persuasive corroborating evidence for duration, frequency, intensity of symptoms and limitations alleged as disabling." (Id.) Notably, Plaintiff did not challenge the ALJ's assessment of Plaintiff's subjective symptom reporting. (See Docket Entries 10, 13.)

Additionally, the ALJ summarized Plaintiff's mental health treatment, making the following, pertinent observations:

- "treatment records from October 5, 2014, indicated a history of depression and anxiety, and upon examination, [Plaintiff] appeared to have a flat affect, but she had a normal mood, and she was alert and oriented times three" (Tr. 25 (citing Tr. 290));
- "[Plaintiff] did attend counseling regularly during 2014 and 2015 but her treatment was conservative . . . [with] no hospitalizations, no urgent care, no intensive outpatient treatment, no

suicidal or homicidal ideation, and no hallucinations" (id. (citing Tr. 282-445));

- "on June 15, 2016, [Plaintiff] was alert and oriented times three" (Tr. 26 (citing Tr. 320)), "and on June 19, 2016, she noted 4 panic attack[s] during her pregnancy, but she was 'doing well' and she was prescribed Valium" (id. (quoting Tr. 346));

- "on July 1, 2016, [Plaintiff] was 'stable' on Zoloft, she denied suicidal ideation and homicidal ideation, and she was 'doing well'" (id. (quoting Tr. 316)); and "on August 2, 2016, she was doing 'well', her mood was stable on Zoloft 25 mg, and she denied suicidal or homicidal ideation" (id. (quoting Tr. 314)); and

- "[Plaintiff] attended 8 months of in person, hands on classes to become an esthetician, that implies greater . . . mental ability than she alleges" (id. (referencing Tr. 48, 50)).

All of those findings support the ALJ's more general observations regarding the intensity, persistence, and limiting effects of Plaintiff's mental symptoms that:

> the record[] demonstrates [her mental status examinations] remain[ed] fairly unremarkable throughout the time period under consideration with some variation in mood/affect but without other[] signs of psychopathology; and although [she] had been noted to be tearful on a very few occasions, [] during most visits[, she] presented as labile; and often her mood and affect were unremarkable, no cognitive issues were indicated, there were no signs of psychosis, no ongoing signs of psychomotor abnormalities, and she was not noted to present as socially inappropriate.

(Id.) In turn, that observation supports the ALJ's finding that, despite moderate limitation in CPP, Plaintiff remained able to perform a limited range of low stress, non-production work. (See Tr. 23.)

Lastly, the ALJ's non-production restriction, in and of itself, adequately accounts for Plaintiff's moderate limitation in CPP. See Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016) (unpublished) (finding non-production restriction "facially addresse[d] moderate . . . limitation in the claimant's ability to stay on task" (internal quotation marks omitted)), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, C.J.). Moreover, Plaintiff's arguments regarding the insufficiency of the ALJ's non-production restriction here fail for the following two reasons.

First, despite Plaintiff's assertion in this Court that the ALJ failed to sufficiently define work "'in a low stress environment not at production pace'" (Docket Entry 10 at 3 (bold font omitted) (quoting Tr. 23)), at the hearing before the ALJ, Plaintiff (through counsel) failed to cross-examine the VE regarding the meaning of that non-production restriction, or how the six jobs the VE cited adhered to that restriction (see Tr. 67-68). As a result, Plaintiff has forfeited, in this Court, her challenge under Thomas to the sufficiency of the ALJ's non-production restriction. See Coyier v. Saul, Civ. No. 20-1899, 2021 WL 2173425, at *2 (7th Cir. May 27, 2021) (unpublished) (holding that the plaintiff "waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates"); Shaibi v. Berryhill, 883 F.3d 1102,

1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (finding that the claimant's failure to raise issue before ALJ "waived [the claim] from being raised on appeal"); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (deeming issue on judicial review waived where the plaintiff "failed to mount any opposition . . . to the view that he retained the capacity to do the [jobs proffered by the VE], despite . . . the opportunity . . . to question the VE about . . . those positions"), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J); Stepinski v. Astrue, No. CA 11-183, 2012 WL 3866678, at *9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing regarding the omission about which he now complains. Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive[ ] . . . [and] finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), recommendation adopted, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished); Young v. United States Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (unpublished) ("[C]laimants should not be permitted

to scan the record for implied or unexplained conflicts . . ., and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").[8]

Second, even if Plaintiff had not forfeited her right to raise this issue on review, it still fails on its merits. In Thomas, the Fourth Circuit held that the ALJ's preclusion of "work requiring a production rate or demand pace[ ] did not give [the court] enough information to understand what those terms mean." Thomas, 916 F.3d at 312 (emphasis added) (internal quotation marks omitted). Shortly thereafter, the Fourth Circuit found fault with "the ALJ's reference to a 'non-production oriented work setting,'" as the Fourth Circuit "d[id] not know what the ALJ intended when she used that phrase," making it "difficult, if not impossible, to evaluate whether restricting [the plaintiff] to a 'non-production oriented work setting' properly accounted for [his] well-documented

[8] Plaintiff disputes that she forfeited the right to contest the sufficiency of the ALJ's non-production restriction by failing to raise the issue at the ALJ's hearing, arguing that "the burden of resolving vocational issues at the hearing falls to the ALJ, not to the claimant[.]" (Docket Entry 13 at 1; see also id. at 2 (quoting Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015), for proposition that Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ('SSR 00-4p'), "'require[s] the ALJ to make an independent identification of conflicts'" between the VE's testimony and the information contained in the DOT (emphasis added)).) However, Plaintiff's argument that the ALJ's insufficient non-production restriction prevents the Court from determining whether the ALJ adequately accounted for Plaintiff's moderate CPP limitation in the RFC under Mascio does not involve an allegation that an apparent, unresolved conflict exists between the VE's testimony and the DOT, and, thus, neither Pearson nor SSR 00-4p provides a basis for the Court to overlook Plaintiff's forfeiture of that issue.

limitations in [CPP]." Perry v. Berryhill, 765 F. App'x 869, 872 (4th Cir. 2019) (emphasis added).

Significantly, the Fourth Circuit has affirmed cases with RFCs limiting claimants to work at a non-production pace, see, e.g., King v. Berryhill, No. 3:18CV1, 2019 WL 1317732, at *2 (W.D.N.C. Mar. 22, 2019) (unpublished) ("non-production pace"), aff'd sub nom. King v. Saul, 787 F. App'x 170 (4th Cir. 2019); Michaels v. Colvin, No. 3:15CV388, 2016 WL 8710975, at *1, 7 (W.D.N.C. Mar. 25, 2016) (unpublished) ("nonproduction pace rates"), aff'd sub nom. Michaels v. Berryhill, 697 F. App'x 223 (4th Cir. 2017). Moreover, Thomas and Perry "did not create a categorical rule that failing to define certain terms constitutes a reversible error," Taylor v. Saul, No. 3:19CV468, 2020 WL 4340536, at *6 (E.D. Va. July 27, 2020) (unpublished), but, rather, "clarified that a reviewing court's ability to understand phrases such as 'production rate o[r] pace' in an ALJ's opinion depends on the phrase's context and use," Katherine M. A. v. Saul, No. 3:19CV649, 2021 WL 1207739, at *10 (E.D. Va. Feb. 2, 2021) (unpublished), recommendation adopted, 2021 WL 1206799 (E.D. Va. Mar. 30, 2021) (unpublished).

As another judge of this Court reasoned:

> In [Perry], the Fourth Circuit specifically distinguished its decision in Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017), where it "found that an ALJ had adequately explained a[n RFC] assessment that restricted the claimant, in part, to 'non-production jobs,'" as "the ALJ in Sizemore provided additional context, explaining that the claimant could perform work only in a 'low stress'

> setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in [CPP]," which "descriptors helped to explain the restriction intended by the ALJ, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations." Perry, [765 F. App'x at 872] n.1. As in Sizemore, and unlike in Perry, the ALJ here provided the necessary 'descriptors,' limiting [the p]laintiff to 'a low stress, low production environment with no rigid quota and occasional exposure to people.' Accordingly, Perry does not justify remand in this action.

Ross v. Berryhill, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. Mar. 29, 2019) (unpublished) (Schroeder, C.J.) (emphasis added) (internal parenthetical citation omitted).

As in Ross (and consistent with Sizemore, as construed in Perry), the ALJ here provided the additional descriptors "low stress environment," "frequent contact with supervisors and coworkers, occasional contact with the public," and "occasional changes in [the] workplace setting." (Tr. 23.) Those descriptors "help[] to explain the restriction intended by the ALJ, and allow[ the Court] to evaluate whether that restriction adequately accounted for [Plaintiff's CPP] limitations," Perry, 765 F. App'x at 872 n.1.[9] Furthermore, Perry's holding that the ALJ failed to

[9] Plaintiff cites certain cases in an attempt to suggest that the additional descriptors must specifically modify the non-production limitation to pass muster under Thomas and Perry. (Docket Entry 13 at 3-4 (citing Christopher J. v. O'Malley, No. 1:23CV743, 2024 WL 3400525, at *6 (M.D.N.C. July 12, 2024) (unpublished) (no "quota-based work"), Kirkman v. Saul, No. 1:19CV555, 2020 WL 5111223, at *5 (M.D.N.C. Aug. 31, 2020) (unpublished) (no "fast paced production requirements"), recommendation adopted, slip op. (M.D.N.C. Aug. 31, 2020) (Osteen, J.), Beckstrom v. Saul, No. 1:19CV746, 2020 WL 1929021, at *7 (M.D.N.C. Apr. 21, 2020) (unpublished) (no "assembly line work"), recommendation adopted, slip op. (M.D.N.C. May 15, 2020) (Eagles, J.), Vang v. Saul, No. 1:18CV255, 2019 WL 4220934, at *9 n.10 (M.D.N.C. Sept. 5, 2019) (unpublished) (no "fast paced"

adequately explain the meaning of a "non-production oriented work setting," Perry, 765 F. App'x at 872 (emphasis added), explains why Barr v. Kijakazi, No. 1:22CV455, Docket Entry 17 (M.D.N.C. June 2, 2023) (unpublished) (Webster, M.J.) (relied on by Plaintiff (see Docket Entry 10 at 5, 12, 16-18; see also Docket Entry 13 at 2-3)) does not aid Plaintiff's cause. In Barr, another judge of this Court remanded for further explanation of the phrase "non-production work setting," and deemed that restriction "remarkably similar to the one found impermissibly vague in *Perry*," Barr, No. 1:22CV455, Docket Entry 17 at 11 (emphasis added). Here, the ALJ barred production pace work, not work in a production work setting. (See Tr. 23.)

---

production rate work), recommendation adopted, slip op. (M.D.N.C. Sept. 23, 2019) (Schroeder, C.J.), Ross, 2019 WL 1430129, at *1 ("low stress, low production environment with no rigid quota"), and Martinez v. Berryhill, No. 3:17CV186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) (precluding work on "assembly line")).) Here, as in Ross and Sizemore, the ALJ included the clarifying descriptor of "low stress environment" (Tr. 23), which directly informs any reasonable understanding of the nonproduction limitation. In addition, the Court has recently issued decisions finding no Thomas/Perry error where the additional descriptors did not directly modify the non-production restriction, but still provided important context sufficient to permit meaningful judicial review. See Matthew S. v. Colvin, No. 1:23CV991, 2024 WL 5245155, at *6 (M.D.N.C. Dec. 30, 2024) (unpublished) ("simple, routine tasks," "simple work-related decisions," "occasional changes in the workplace setting," "no complex decision making," occasional interaction "with supervisors and coworkers," and no interaction "with the public"); Ricky F. v. O'Malley, No. 1:23CV720, 2024 WL 4333136, at *5 (M.D.N.C. Sept. 27, 2024) (unpublished) (Peake, M.J.) ("simple routine tasks and simple work related decisions," "occasional changes in the workplace setting," and "frequent[ interaction] with supervisors and coworkers but never with the public"); Shaw v. Kijakazi, No. 1:20CV581, 2021 WL 3079905, at *8 (M.D.N.C. July 21, 2021) (unpublished) ("simple work-related decisions," "occasional interaction with the public," and "frequent interaction with co-workers and supervisors"), recommendation adopted, No. 1:20CV581, 2021 WL 6202788 (M.D.N.C. Aug. 23, 2021) (unpublished) (Osteen, J.).

Put simply, Plaintiff has demonstrated neither that the ALJ's non-production restriction (read in context) prevents the Court from meaningfully reviewing the ALJ's compliance with Mascio, nor that the ALJ erred under Mascio.

b. Conflict Between VE's Testimony and DOT Regarding Non-Production Restriction

Plaintiff's contention that the ALJ's failure to "include sufficient additional information to understand and review the meaning of the ALJ's production-related limitation" (Docket Entry 10 at 11) prevents the Court from "determin[ing] if VE testimony regarding the availability of the jobs cited for an individual with [those] production-related limitations conflicts with the [DOT]'s description of the requirements of each job" (id. at 12 (bold font, underscoring, and block formatting omitted)) fares no better. To begin, the VE here did not express any difficulty in understanding the meaning of the words "low stress environment" and "no production pace work" (Tr. 65) in responding to the ALJ's dispositive hypothetical question (see Tr. 65-66),[10] and provided

[10] Significantly, the DOT's definition of "light work" includes the words "production rate pace":

> [A] job should be rated [l]ight [w]ork . . . when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, App'x C ("Components of the Definition Trailer"), § IV ("Physical Demands - Strength Rating"), 1991 WL 688702 (emphasis added).

six jobs that fit within the ALJ's non-production restriction (see Tr. 65-67). Although Plaintiff (through counsel) declined to cross-examine the VE during the hearing regarding how those jobs adhered to the non-production restriction (see Tr. 67-68), Plaintiff now asserts that the DOT's job duty descriptions for all six of those jobs "could require work that exceeds a limitation to 'a low stress environment with no production pace'" (Docket Entry 10 at 13 (emphasis added); see also id. at 13-16 (quoting DOT job descriptions for DOT, No. 209.687-026 ("Mail Clerk"), 1991 WL 671813 (G.P.O. 4th ed. rev. 1991), DOT, No. 222.687-022 ("Routing Clerk"), 1991 WL 672133, DOT, No. 207.685-014 ("Photocopying-Machine Operator"), 1991 WL 671745, DOT, No. 979.687-026 ("Type-Copy Examiner"), 1991 WL 688696, DOT, No. 739.684-094 ("Lamp-Shade Assembler"), 1991 WL 680137, and DOT, No. 713.687-018 ("Final Assembler"), 1991 WL 679271)).

The Court rejects that line of argument because, the mere fact that jobs like Lamp Shade Assembler and Final Assembler could involve work in a production setting does not compel a finding that those jobs actually involve a production pace. See Martinez v. Berryhill, No. 3:17CV186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) ("[The p]laintiff argues that the[ jobs of dowel inspector and getterer] are involved with the production process of dowels and incandescent lamps, respectively, and therefore must conflict with the limitation of not working at a

production rate pace. The [c]ourt cannot agree, as such a conflict implies that being involved with the production of any good in any way implies a production rate or pace. Nothing in the [DOT]'s description for dowel inspector or getterer has anything to do with rate or pace, which is what the limitation in question was designed to restrict."), aff'd sub nom. Martinez v. Saul, 776 F. App'x 175 (4th Cir. 2019). Moreover, Plaintiff's subjective opinion that all six jobs "could reasonably require more than a 'low stress environment'" and "more than 'no production pace'" (Docket Entry 10 at 13-16 (emphasis added) (quoting Tr. 23)) does not outweigh the ALJ's reliance on the DOT and the VE's testimony, see Nace v. Colvin, No. EDCV 14-641, 2015 WL 2383833, at *9 (C.D. Cal. May 18, 2015) (unpublished) ("[The p]laintiff's personal opinion is not a reliable source of job information, and she cites no legal authority for her contention that the [c]ourt should overlook the two designated sources of reliable job information in this case - the [DOT] and the VE's testimony - in favor of [the plaintiff's] own subjective beliefs.").

In light of the foregoing analysis, Plaintiff's sole assignment of error does not warrant relief.

## III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 6, 2025